# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KAREN EVANS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHASE MANHATTAN MORTGAGE )<br>CORP., *et al.*, )<br>)<br>Defendants. )<br>) | Civil Action No. 04-2185 (RMC) |

## <u>MEMORANDUM OPINION</u>

This is a diversity action arising from a foreclosure sale of residential property in the District of Columbia.  In her Second Amended Complaint, Plaintiff Karen Evans, as the personal representative of the estate of her deceased sister, Dorothy Evans, brings suit against three groups of Defendants: the beneficiary of the deed of trust, Chase Manhattan Mortgage Corp. (hereinafter "Chase"); the trustees at the foreclosure sale, Draper & Goldberg PLLC, and that firm's named partners, David Draper and Darren Goldberg, and two of its associates, James Holderness and Ignacio Cortina (collectively, the "Trustees"); and the purchasers at the foreclosure sale, Anthony Chibs and Joan Tirbaney, and their business, Aceware Investment Group LLC (collectively, the "Purchasers").[1]  Ms. Evans also raises claims, in her individual capacity, against Messrs. Chibs and Tirbaney.  Each of these three groups moves to dismiss the claims against them as barred by the doctrine of *res judicata*.

---

[1] The Court has also granted leave to intervene to First American Title Insurance Company, which issued a title insurance policy to Mr. Chibs and Ms. Tirbaney on the property at issue.

## I. BACKGROUND

The background facts, first summarized in the Court's March 8, 2005, Memorandum Opinion [Dkt. #18], need not now be recounted. For present purposes, it is necessary only to elaborate on the previous litigation initiated by Plaintiff's deceased sister, Dorothy, against Chase. On April 11, 2002, Dorothy filed a *pro se* complaint in D.C. Superior Court, styled *Dorothy E. Evans v. Chase Manhattan Mortgage Corp. c/o Draper & Goldberg*, No. 02-2730, seeking to enjoin the foreclosure sale of her home at 1012 6th Street NE, Washington, DC 20002 (the "Property"). Compl. ¶ 58; J.A. Exh. 3 [Dkt. #63].[2] Filed with that complaint were motions for both a preliminary injunction and a temporary restraining order. J.A. Exhs. 4-5. At a hearing on April 22, 2002, J.A. Exh. 7, the Superior Court denied Dorothy's motion for a temporary restraining order because the foreclosure had already occurred, and set the matter for a May 3, 2002, status hearing. At the May 3 hearing, the Superior Court noted that Dorothy "orally voluntarily dismisse[d] her request for a hearing on [the] preliminary injunction" and set the matter for a July 12, 2002, status conference. J.A. Exh. 12. About a week later, on May 13, 2002, Chase filed an answer to Dorothy's complaint. J.A. Exh. 11.[3] When neither party appeared at the July 12 status hearing, the case was "dismissed by the court for want of prosecution." J.A. Exh. 12.

The same day, Dorothy moved the Superior Court to reinstate her case, noting that she had been "facing serious health issues." J.A. Exh. 13. That motion was denied because the "defendant was not properly served [with the] motion to reinstate" and because the doctor's note

[2] "Compl." refers to the Second Amended Complaint.

[3] Chase's answer was filed by Draper & Goldberg PLLC, in its role as Chase's legal counsel. Although Draper & Goldberg PLLC was served with a copy of Dorothy's complaint, J.A. Exh. 9, that firm does not contend that it was a named defendant in the previous action.

Dorothy submitted in support of the motion did "not indicate that she was under doctor's care on . . . the date she failed to appear." J.A. Exh. 15.  Dorothy appealed the denial of her motion to reinstate, J.A. Exh. 16, but the D.C. Court of Appeals dismissed her appeal on December 10, 2002, for failure to file certain documents and tender the required docketing fee.  J.A. Exh. 18.  Dorothy passed away on January 4, 2003, of metastatic liver cancer.  Compl. ¶ 64.

On or about November 25, 2003, Plaintiff, through counsel, moved the Superior Court to substitute her for Dorothy and to reconsider its denial of Dorothy's motion to reinstate the complaint.  J.A. Exh. 17.  Chase opposed.  J.A. Exh. 23.  In an order filed on January 29, 2004, the Superior Court denied Plaintiff's motion to substitute herself for Dorothy as untimely, and denied without prejudice Plaintiff's motion to reconsider reinstatement of the complaint.  J.A. Exh. 20.  As to the latter motion, the court noted that Plaintiff had "provided no new information since [its] denial of the motion to reinstate." *Id.*  Nearly ten months later, on November 23, 2004, Plaintiff filed a new complaint in D.C. Superior Court, captioned *Karen Evans v. Chase Manhattan Mortgage Corp., et al.*, No. 04-8985.  Chase, with the consent of all defendants then named, timely removed the action to this Court.  That complaint has since been amended twice.

## II. LEGAL STANDARDS

Defendants move to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  A Rule 12(b)(6) motion challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim.  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The plaintiff need not plead the elements of a *prima facie* case in the complaint.  *See*

*Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).  In deciding a 12(b)(6) motion, the Court "may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice."  *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted).  *Res judicata* is an affirmative defense that is generally pleaded in the defendant's answer, but is also properly brought in a pre-answer Rule 12(b)(6) motion when "all relevant facts are shown by the court's own records, of which the court takes notice."  *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992); *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978) (*res judicata* "may be raised on a 12(b)(6) motion if the predicate establishing the defense is apparent from the face of the complaint"); *see Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 76-77 (D.C. Cir. 1997) (noting that courts have permitted parties to assert *res judicata* under Rule 12(b)(6)).

Under the doctrine of *res judicata*, also known as claim preclusion, "a judgment on the merits in a prior suit bars a second suit involving identical parties or their privies based on the same cause of action."  *Apotex Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004).  "*Res judicata* plays a central role in advancing the 'purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions.' "  *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).  "As the Supreme Court has explained: 'To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.' "  *Id.* (quoting *Montana*, 440 U.S. at 153-54).  In short, the doctrine embodies the principle "that a party who once has had a *chance* to litigate a claim before an appropriate tribunal usually ought not to have another chance

4

to do so." *SBC Comms. Inc. v. FCC*, 407 F.3d 1223, 1229 (D.C. Cir. 2005) (quoting the Restatement (Second) of Judgments ch. 1 at 6 (1982)).

The D.C. Circuit has "embraced the Restatement (Second) of Judgments' pragmatic, transactional approach to determining what constitutes a cause of action" for *res judicata* purposes. *U.S. Indus. Inc. v. Blake Constr. Co.*, 765 F.2d 195, 205 (D.C. Cir. 1985). "In addressing the cause-of-action question, the Restatement speaks in terms of a transaction or series of transactions and gives 'weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.' " *Id.* (quoting the Restatement (Second) of Judgments § 23(2) (1982)). "The Restatement approach reflects a trend 'in the direction of requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence.' " *Id.* (quoting 1B J. Moore, Moore's Federal Practice ¶ 0.410[1], at 359 (2d ed. 1983)). The D.C. Circuit in *U.S. Industries* specifically examined whether there was an identity of parties, an identity of subject matter, and an identity of contract between the two cases, and whether there was a final adjudication on the merits in the prior case. *Id.* at 206.

Because the defense of *res judicata* is of jurisdictional character, courts can and should raise the issue *sua sponte*. *See Stanton*, 127 F.3d at 77 (D.C. Cir. 1997) ("As *res judicata* belongs to courts as well as to litigants, even a *party's* forfeiture of the right to assert it . . . does not destroy a *court's* ability to consider the issue *sua sponte*."). Noting that "D.C. courts articulating the doctrine [of *res judicata*] commonly cite federal cases applying federal law," the D.C. Circuit has "discern[ed] no material differences in the District of Columbia's law of *res judicata* and the federal common law of *res judicata*." *Id.* at 78 n.4. "Since claim preclusion is an affirmative defense, the

burden is on the party asserting it to prove all of the elements necessary for its application." 18

James Wm. Moore et al., Moore's Federal Practice § 131.52 (3d ed. 2005).

### III. DISCUSSION

**A. Claims Against Chase**

Of the fifteen counts alleged in Plaintiff's Second Amended Complaint, Chase is

named in only eight: (I) Wrongful Foreclosure (against Chase and the Trustees); (II) Breach of

Contract and the Covenant of Good Faith (against Chase alone); (IV) Civil Conspiracy and Fraud

(against Chase and the Trustees); (V) Negligent Misrepresentation (against Chase and the Trustees);

(VI) Intentional Infliction of Emotional Distress (against Chase alone); (VII) Violation of the

Consumer Protection Procedures Act (against Chase and the Trustees); (VIII) Violation of the

Consumer Protection Procedures Act — Unlawful Trade Practices (against Chase and the Trustees);

and (X) Accounting (against Chase alone).

Chase moves to dismiss each of these counts as barred by *res judicata*. As the record

makes plain, these claims satisfy the four *res judicata* elements traditionally applied by this Court:

(1) identity of parties; (2) a judgment from a court of competent jurisdiction; (3) a final judgment

on the merits; and (4) an identity of the cause of action. *See, e.g.*, *Am. Forest Research Council v.

Shea*, 172 F. Supp. 2d 24, 29 (D.D.C. 2001); *see also U.S. Indus.*, 765 F.2d at 205. There is no

dispute that the first two elements are satisfied. First, Chase appeared as a defendant in both the

instant and prior suits, and Plaintiff, who brings suit against Chase only in her capacity as the

personal representative of Dorothy's estate, is in privity with the prior plaintiff. *See Patton v. Klein*,

746 A.2d 866, 870 (D.C. 1999) (listing traditional categories of privies). Second, neither party has

at any time questioned that the Superior Court was competent to adjudicate this matter.

**1. Final Judgment on the Merits**

The parties dispute, however, whether the Superior Court's July 12, 2002, dismissal

of Dorothy's case constitutes a final judgment on the merits.  The Court is convinced that it does.

The Superior Court explicitly dismissed Dorothy's case "for want of prosecution."  J.A. Exh. 12

(Court Clerk's Memorandum); J.A. Exh. 2 (Superior Court Docket) at 3.  Its authority to do so is

found in Rule 41(b) of the D.C. Superior Court Rules of Civil Procedure, which provides that:

> For failure of the plaintiff to prosecute . . . the Court may, sua sponte,
> enter an order dismissing the action or any claim therein. . . . Unless
> the Court in its order for dismissal otherwise specifies, a dismissal
> under this subdivision and any dismissal not provided for in this Rule,
> other than a dismissal for lack of jurisdiction, or for failure to join a
> party under Rule 19, operates as an adjudication upon the merits.

D.C. Sup. Ct. Civ. R. 41(b).[4]  This Rule, like its federal counterpart, means what it so plainly says:

"Under Rule 41(b), a dismissal for failure to prosecute 'operates as an adjudication on the merits'

unless the district court in its order 'otherwise specifies.' "  *Proctor v. Millar Elevator Serv. Co.*, 8

F.3d 824, 824 (D.C. Cir. 1993) (per curiam) (quoting Fed. R. Civ. P. 41(b)); *see Taylor*, 407 A.2d

at 590 n.4 (noting that D.C. Sup. Ct. Civ. R. 41 is construed in light of the "literally or substantially

identical" federal rule).  In *Proctor*, the district court had granted the plaintiff's Rule 41(b) motion

and dismissed the action, but had not indicated whether its dismissal was with or without prejudice.

*Id.* at 825.  Following the plain language of the Rule, the D.C. Circuit held that, by operation of Rule

---

[4] D.C. Sup. Ct. Civ. R. 41(b) also provides: "Any order of dismissal entered sua sponte, including a dismissal for failure to effect service within the time prescribed in Rule 4(m), shall not take effect until fourteen (14) days after the date on which it is docketed and shall be vacated upon the granting of a motion filed by plaintiff within such 14 day period showing good cause why the case should not be dismissed."  Plaintiff does not here contend that the Superior Court deviated from this procedure, and the Court interprets the Superior Court's September 11, 2002, Order denying Dorothy's motion to reinstate her complaint as finding that Dorothy had failed to show "good cause" why the case should not be dismissed.  *See* J.A. Exh. 15.

41(b), the action had been dismissed with prejudice. *Id.* at 824. Here, although the Superior Court

acted *sua sponte*, the result is the same: Because it did not specify one way or the other, its order

dismissing the case for want of prosecution is deemed an "adjudication on the merits" by operation

of Rule 41(b). *See Proctor*, 8 F.3d at 824.[5]

        Plaintiff's efforts to resist this conclusion are unpersuasive. She first claims that the

relevant order is not the July 12, 2002, dismissal but, rather, the January 12, 2004, denial of the

motion to reconsider reinstating the complaint — the latter of which was denied without prejudice.

Pl.'s Opp'n at 8-9; J.A. Exhs. 12, 20. This is simply incorrect. The July 12, 2002, dismissal was

appealed, and that appeal was dismissed, effectively closing the case. J.A. Exhs. 18-19. Plaintiff's

motion to reconsider reinstating the complaint, though entertained, was denied. The fact that it was

denied "without prejudice" is of no moment; at best, that was an invitation to file a successive

motion with the "new information" the Superior Court found lacking. J.A. Exh. 20. In any event,

the prior case, once dismissed, was never reopened, and its merits are not subject to collateral attack

---

[5] In this regard, Plaintiff's reliance on *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2002), is misplaced. *Semtek* addressed the claim-preclusive effect of federal court, not state court, judgments. *Id.* at 499. The Court held that "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity" and adopted, as that federal common law, "the law that would be applied by state courts in the State in which the federal diversity court sits" (except where that state law is "incompatible with federal interests"). *Id.* at 508-09. Although, in reaching that result, the Court observed that "it is no longer true that a judgment 'on the merits' is necessarily a judgment entitled to claim-preclusive effect," *id.* at 503, its statement was limited to that context and has no application here.

    The instant case, by contrast, requires the Court to evaluate the claim-preclusive effect of a state court judgment. "The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which . . . directs a federal court to refer to the preclusion law of the State in which judgment was rendered." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). Under D.C. law, a dismissal under Rule 41(b) for failure to prosecute is with prejudice, and precludes refiling the same claims in that court. *Taylor*, 407 A.2d at 590 & n.3. This Court must give that judgment the preclusive effect it would be accorded by a D.C. court. *See Marrese*, 470 U.S. at 380.

here.  *See Thornton v. Norwest Bank of Minn.*, 860 A.2d 838, 841 (D.C. 2004) (the finality of an

order may be altered on appeal from that order, but not in a separate action); *Campbell v. Campbell*,

58 A.2d 825, 827 (D.C. 1948) (a judgment is not subject to collateral attack unless void).

      Plaintiff next suggests that the prior action was actually dismissed for mootness,

rather than for want of prosecution.  This contention, besides being flatly contrary to the record, *see*

J.A. Exhs. 2, 11, 12, is belied by Plaintiff's earlier representations to the Superior Court, in her

motion to reconsider reinstatement of the complaint, that "because the foreclosure sale had already

taken place, [Dorothy] voluntarily dismissed the efforts for a preliminary injunction and continued

to litigate for damages."  J.A. Exh. 17 at 1 n.1.  The Court thus finds it without merit.  Finally,

Plaintiff urges the Court to find an equitable exception to the doctrine of *res judicata* in the

interstices of *Montana v. United States*, 440 U.S. 147, 155 (1979), which recognized certain narrow

exceptions to general principles of estoppel.  However, those exceptions are not applicable here and,

as the Supreme Court has since reiterated, "There is simply 'no principle of law or equity which

sanctions the rejection by a federal court of the salutary principle of *res judicata*.' "  *Federated Dep't*

*Stores v. Moitie*, 452 U.S. 394, 401 (1981) (quoting *Heiser v. Woodruff*, 327 U.S. 726, 733 (1946)).

Though the Court is not unsympathetic to Plaintiff's situation, it is unable to disregard settled legal

principles in an *ad hoc* search for "simple justice."  *See id.*

### 2.  Same Action

      Finally, Plaintiff argues that some of her counts against Chase — specifically, Counts

IV, VI, VIII, and X — are not barred by *res judicata* because they arose after Dorothy filed her

Superior Court complaint on April 11, 2002.  Pl.'s Opp'n at 11-12.  "Under *res judicata*, a final

judgment on the merits of an action precludes the parties or their privies from relitigating issues that

were or *could have been raised* in that action." *Apotex*, 393 F.3d at 218 (D.C. Cir. 2004) (internal

quotation marks and citation omitted).  The doctrine does not, however, "bar parties from bringing

claims based on material facts that were not in existence when they brought the original suit." *Id.*

Plaintiff argues that Counts IV, VI, and VIII should be read to embrace allegations

that Chase improperly withheld the surplus from the foreclosure sale, and failed to remit that surplus

until April 21, 2003. Pl.'s Opp'n at 11.  The Complaint, however, simply does not allege these facts.

Rather, Count IV alleges Civil Conspiracy and Fraud based on Chase's false representations with

respect to payments received and amounts owed on the Note, and Chase's refusal to listen to

Dorothy's protests about and explanations for the shortfall.  Compl. ¶¶ 120-21.  Count VI alleges

Intentional Infliction of Emotional Distress based on similar misrepresentations about wrongful

charges and missing credits, Chase's refusal to adequately consider Dorothy's objections to her

account balance, and Chase's refusal to postpone the foreclosure sale. *Id.* ¶¶ 137-39.  And Count

VIII alleges Consumer Protection Procedures Act violations based on improper charges, unlawful

interest payment practices, confusing invoices, the failure to provide an accurate cure amount, and

other perceived faults in the notice of foreclosure. *Id.* ¶¶ 153-59.  Significantly, the behavior alleged

in each of these counts predates and, in Plaintiff's view, caused the foreclosure.  True, the Complaint

alleges in Count XI — against the Trustees alone — that the Trustees failed to promptly pay over

the surplus resulting from foreclosure. *Id.* ¶¶ 176-77.  But the Complaint — though having twice

been amended, most recently on June 10, 2005 — provides no hint that Chase was involved in any

"improper withholding" of the surplus after foreclosure. These allegations are made for the first time

in Plaintiff's opposition to Chase's motion to dismiss.[6]

The Court is mindful of its duty to construe Plaintiff's complaint liberally, granting her the benefit of all inferences that can be derived from the facts alleged. *Kowal v. MCI Comms. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, the Court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Id.* In fact, on a Rule 12(b)(6) motion, the Court "may not draw upon facts from outside the pleadings," *Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997), and the D.C. Circuit has explained that "the sparse case law addressing the effect of factual allegations *in briefs or memoranda of law* suggests that such matters may never be considered when deciding a 12(b)(6) motion." *Henthorn v. Dep't of the Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994) (emphasis added). Here, examining the Complaint alone, the Court perceives no factual allegations concerning Chase in Counts IV, VI, or VIII that took place after Dorothy's Superior Court complaint was filed on April 11, 2002. *See* Compl. ¶¶ 119-27, 136-42, 152-60. Moreover, the factual recitation preceding the substantive counts in the instant Complaint makes no allegations against Chase dating after the foreclosure sale on March 14, 2002.

---

[6] To the extent that Count IV asserts, by virtue of its "civil conspiracy" allegation, liability on the part of Chase for the Trustees' actions, the Court observes that there is no independent tort action for civil conspiracy in the District of Columbia. *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983) ("Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort."). Thus, Count IV hinges entirely on Plaintiff's ability to make out a cognizable claim of fraud — the "underlying tortious act" — against either Chase or the Trustees. *See id.* But as discussed in the text above, Count IV contains no factual allegations of fraud dating from after the foreclosure. *Cf. Apotex*, 393 F.3d at 218. In any event, the allegations of fraud are not pled with sufficient particularity to permit the Court to draw an inference of fraud. *See Va. Acad. of Clinical Psychologists v. Group Hospitalization*, 878 A.2d 1226, 1233 (D.C. 2005) (reciting elements of common law fraud); *Atraqchi v. GUMC Unified Billing Servs.*, 788 A.2d 559, 563 (D.C. 2002) (reviewing the "strict pleading requirements" for fraud claims, and noting that "allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient"); *see also* Fed. R. Civ. P. 9(b) (requiring fraud claims to be pleaded with particularity).

*See id.* ¶¶ 57-66.  To construe the Complaint as including an allegation that Chase was involved in improperly withholding the surplus would strain the liberal reading requirement beyond its breaking point, especially given that Plaintiff is represented by counsel and has twice amended her complaint. Simply put, Counts IV, VI, and VIII of the instant Complaint "aris[e] out of the same transaction or occurrence" that was the basis for Dorothy's previous complaint, *see U.S. Indus.*, 765 F.2d at 205, and each of the facts alleged against Chase in the Complaint was in existence when Dorothy's previous complaint was filed, *see Apotex*, 393 F.3d at 218.  Plaintiff's efforts to augment the factual allegations in her Complaint by way of her opposition to Chase's motion to dismiss is an attempt to avoid the bar of *res judicata* that must fail.  *See Henthorn*, 29 F.3d at 688.

Count X, which seeks an Accounting from Chase, meets the same fate.  This count alleges, for the most part, behavior that predates the first complaint.  Specifically, it asserts that Chase "owed [Dorothy] a contractual duty to invoice and add only [agreed-upon] charges" and a "contractual and statutory duty to account to [Dorothy] for all money received on [her] behalf." Compl. ¶¶ 170-71.  Although Plaintiff again asserts, as she did for Counts IV, VI, and VIII, that Count X "is based upon the failure to distribute the proceeds of the foreclosure sale and to determine the actual amount of the surplus," Pl.'s Opp'n at 12, this suggestion contradicts the factual allegations found in Count X of the Complaint, which are clearly focused on an accounting of the amount owed on the Note as of the date of the foreclosure sale.[7]  Under the Second Restatement's pragmatic, transactional approach, this claim, too, "aris[es] out of the same transaction or occurrence" that formed the basis of Dorothy's prior complaint, and must have been brought then,

---

[7] Count XI, by contrast, which seeks an Accounting from the Trustees alone, is focused precisely on the failure to "expeditiously determine the amount of monies which were to be returned . . . after the . . . foreclosure auction."  Compl. ¶ 176.

if at all.  *See U.S. Indus.*, 765 F.2d at 205.[8]

* * * * *

Having concluded that the elements of *res judicata* are satisfied as to all claims against Chase in the instant action, the Court will grant Chase's motion to dismiss them.  Remaining are Plaintiff's claims against the Trustees and the Purchasers, to which the Court now turns.

### B. Claims Against the Trustees

Plaintiff names the Trustees in eight counts: (I) Wrongful Foreclosure (against Chase and the Trustees); (III) Breach of Fiduciary Duty (against the Trustees alone); (IV) Civil Conspiracy and Fraud (against Chase and the Trustees); (V) Negligent Misrepresentation (against Chase and the Trustees); (VII) Violation of the Consumer Protection Procedures Act (against Chase and the Trustees); (VIII) Violation of the Consumer Protection Procedures Act — Unlawful Trade Practices (against Chase and the Trustees); (IX) Intentional Infliction of Emotional Distress (against the Trustees alone); and (XI) Accounting (against the Trustees).

The Trustees move to dismiss on two grounds.  First, they assert that Plaintiff's claims against them are barred by *res judicata* or, in the alternative, collateral estoppel.  Trustees' Mot. at 6-8.  Second, they submit that Plaintiff fails to state a claim against Defendants Draper & Goldberg PLLC and Mr. Draper on the theory that, because Messrs. Goldberg, Cortina, and

---

[8] The fact that Count X makes one post-foreclosure factual allegation — specifically, that Plaintiff, as the personal representative of Dorothy's estate, has asked Chase to render a comprehensible accounting of Dorothy's account, and that Chase has refused, Compl. ¶ 172 — does not change this result.  As the personal representative of Dorothy's estate, Plaintiff "has the same standing to sue and be sued . . . as the decedent had immediately prior to death."  D.C. Code § 20-701(c).  Plaintiff brings Count X in her capacity as the personal representative of Dorothy's estate, not in her individual capacity.  *See* Compl. ¶ 2.  Because Dorothy must have brought this claim, if at all, as part of the prior action, Plaintiff, as her personal representative, cannot now resurrect it.

Holderness acted as Substitute Trustees at the foreclosure sale, they alone — not Mr. Draper or Draper & Goldberg PLLC — owed Dorothy a fiduciary duty. *Id.* at 8-9.

### 1. Res Judicata and Collateral Estoppel

The Trustees' *res judicata* argument fails because they have not met their burden to establish the existence of an "identity of parties" between themselves and Chase, the only party named as a defendant in Dorothy's original Superior Court complaint. *See Am. Forest Research Council*, 172 F. Supp. 2d at 29 (listing elements of *res judicata*); *see also U.S. Indus.*, 765 F.2d at 205 (same). A defendant not named in a prior suit may establish an "identity of parties" and thus invoke *res judicata* by demonstrating that it is in privity with a party named in the prior suit. *Apotex*, 393 F.3d at 217. The Trustees' attempt to establish that they are in privity with Chase begins and ends in a single conclusory sentence: "The . . . Trustees foreclosed on the subject property on behalf of [Chase] by appointment and therefore has [sic] privity with [Chase]." Trustees' Mot. at 7-8. In their reply, moreover, the Trustees assert — incorrectly — that "Plaintiff failed to cite any case law or statute which supports the spurious argument that the . . . Trustees do not have privity with Chase merely because they owe fiduciary duties to other parties." Trustees' Reply at 3. The Trustees misunderstand that, as the party raising *res judicata* as an affirmative defense, it is they and not the Plaintiff who bear the burden on this issue. *See* 18 Moore's Federal Practice § 131.52.

The D.C. Circuit has described "privity" as an "elusive concept" and a "term that may mislead more than it enlightens." *Gill & Duffus Servs., Inc. v. A. M. Nural Islam*, 675 F.2d 404, 405-06 & n.3 (D.C. Cir. 1982). "Privity is the mutual or successive relationship to the *same* rights of property." *Id.* at 405 n.3 (emphasis added; internal quotation marks omitted). In other words, a privy is a person "so identified in interest with a party to former litigation that he represents precisely

14

the *same* legal right in respect to the subject matter involved." *Id.* (emphasis added).  Plaintiff argues

that because trustees under a deed of trust must "act for the benefit of both parties, borrower as well

as lender," *Sheridan v. Perpetual Bldg. Assoc.*, 299 F.2d 463, 464 (D.C. Cir. 1962) (per curiam), the

Trustees here cannot possibly have the "same legal right" as Chase with respect to the Property.  *See*

*Gill & Duffus*, 675 F.2d at 405 n.3; Pl.'s Opp'n at 10-11.  In support of the contrary proposition that

trustees under a deed of trust are *ipso facto* in privity with the beneficiary of the deed of trust, the

Trustees cite no case law.   Trustees' Mot. at 7-8; Trustees' Reply at 3.   Their conclusory,

unsupported arguments are insufficient to meet their burden of proof on this issue.  *See* 18 Moore's

Federal Practice § 131.52.

The Trustees' collateral estoppel argument fails as well.  The D.C. Court of Appeals

has described collateral estoppel, or issue preclusion, to mean that "when an issue of fact or law is

actually litigated and determined by a valid and final judgment, and the determination is essential

to the judgment, the determination is conclusive in a subsequent action between the parties, whether

on the same or a different claim."  *Carr v. Rose*, 701 A.2d 1065, 1076 (D.C. 1997).  Though the

District of Columbia sometimes permits "strangers to the first action" to assert collateral estoppel

to bar relitigation of issues in a second action, *see id.* (recognizing the permissibility of defensive

nonmutual collateral estoppel), the regular elements of that doctrine must first be satisfied.  An issue

is "actually litigated" for collateral estoppel purposes "when it is (1) properly raised, by pleadings

or otherwise, (2) submitted for determination, and (3) determined."  *Id.* at 1076-77 (quoting the

Restatement (Second) of Judgments § 27 cmt.d) (internal quotation marks omitted).  Applying that

standard, despite the fact that the Rule 41(b) dismissal of the prior case operates as an adjudication

on the merits for *res judicata* purposes, the Court is unable to conclude that any issue relevant to the

15

present controversy between Plaintiff and the Trustees was "actually litigated" — that is, raised, submitted, and determined — in Superior Court.  Moreover, under these circumstances, the interests supporting application of the doctrine — specifically, conserving judicial resources, maintaining consistency, and avoiding oppression or harassment of an adverse party — are simply not implicated.  *See* Restatement (Second) of Judgments § 27 cmt. e.[9]  These considerations "weigh strongly in favor of nonpreclusion." *Id.*  The Court therefore concludes that is it inappropriate to give issue-preclusive effect to the prior Superior Court judgment.  *See* 18 Moore's Federal Practice § 131.52.

## 2. Identity of Trustees

The Trustees next argue that Plaintiff fails to state a claim against Draper & Goldberg PLLC and Mr. Draper because it is an "undisputed fact" that only Messrs. Goldberg, Cortina, and Holderness acted as Substitute Trustees at the foreclosure sale.  Trustees' Mot. at 8.  Thus, they argue, "pursuant to the [D.C.] foreclosure statutes, [Draper & Goldberg PLLC] and [Mr.] Draper could not have conducted the Foreclosure Sale or owes [sic] Plaintiff any fiduciary duties as Substitute Trustees." *Id.*

The Trustees' reliance on the Deed of Appointment of Substitute Trustees to establish that neither Mr. Draper nor Draper & Goldberg PLLC acted as trustee or played a role in the foreclosure sale converts their motion to dismiss into a motion for summary judgment with respect to this issue.  *See* Fed. R. Civ. P. 12(b) ("If . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . ."); *Fraternal Order of Police Dep't of Corrs. Labor Comm. v. Williams*, 375 F.3d 1141, 1144 (D.C. Cir. 2004)

---

[9] The D.C. Court of Appeals often looks to the Second Restatement in developing its rules on collateral estoppel.  *See, e.g.*, *Carr*, 701 A.2d at 1076; *Pipher v. Odell*, 672 A.2d 1092, 1095 (D.C. 1996).

("Because both parties submitted materials outside the pleadings and the court relied on those materials in concluding that the [plaintiff] had failed to state a claim, the motion to dismiss should have been converted to a summary judgment motion under [Rule] 56."). "Summary judgment . . . is appropriate where the pleadings and the record show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1041 (D.C. Cir. 2003) (internal quotation marks omitted).

The Deed of Appointment of Substitute Trustees was signed on February 7, 2002. J.A. Exh. 1. In that document, Chase, pursuant to its powers as beneficiary under the Deed of Trust, appears to appoint Messrs. Goldberg, Cortina, and Holderness as Substitute Trustees. *Id.* Consistent with that document, the Trustee's [sic] Deed — which purports to grant title to Mr. Chibs and Ms. Tirbaney — was conveyed by Messrs. Goldberg, Cortina, and Holderness on April 12, 2002. Compl. Exh. M. However, the role played by Mr. Draper and Draper & Goldberg PLLC remains unclear. A letter sent to Dorothy by Chase on January 11, 2002, identified Draper & Goldberg PLLC as "the attorney/trustee who is handling the foreclosure." Compl. Exh. I. And the Notice of Foreclosure Sale, which listed the cure amount and identified "David W. Draper, Jr., Esq., Draper & Goldberg P.L.L.C." as the "[p]erson to contact to stop foreclosure sale" was sent to Dorothy by Mr. Draper on February 12, 2002 — five days *after* the Deed of Appointment of Substitute Trustees was signed. Compl. Exh. K. This record evidence places the roles and duties of Mr. Draper and Draper & Goldberg PLLC in genuine dispute, and precludes the Court from granting summary judgment to them. *See Kingman Park*, 348 F.3d at 1041. Thus, the Trustees' motion will be denied.

### C. Claims Against the Purchasers

Plaintiff brings just four counts against the Purchasers: (XII) Declaratory Relief quieting title (against Mr. Chibs and Ms. Tirbaney); (XIII) Declaratory Relief quieting title (against Aceware); (XIV) Wrongful Eviction (against Mr. Chibs and Ms. Tirbaney); and (XV) Interference with Right to Body [sic] Remains (against Mr. Chibs and Ms. Tirbaney). Plaintiff brings the latter two claims in her individual capacity, not as the personal representative of Dorothy's estate, Compl. ¶ 2, and the Purchasers have made no attempt to argue that Plaintiff, in her individual capacity, is in privity with Dorothy for *res judicata* purposes. As to the former two claims, the Purchasers, like the Trustees, offer nothing more than conclusory assertions that they, too, are in privity with Chase. They simply assert that their rights in the Property are "identical and successive" to those held by the Trustees who, for the reasons stated in the Trustees own motion, which the Purchasers adopt, are in privity with Chase. Purchasers' Mot. at 3. The success of the Purchasers' *res judicata* argument thus depends on the success of the Trustees' privity argument. The Purchasers offer no additional explanation or case law. Thus, for the reasons stated in Part III.B.1, *supra*, this motion will be denied because the Purchasers have failed to meet their burden of proof. *See* 18 Moore's Federal Practice § 131.52.

### IV. CONCLUSION

For the reasons stated above, all of Plaintiff's claims against Chase are barred by *res judicata*. The Court will therefore grant Chase's Motion to Dismiss, and will dismiss Defendant Chase from this action. The Court will deny the Trustees' and the Purchasers' motions to dismiss. The Trustees shall file an answer to Plaintiff's Second Amended Complaint, and to the Purchasers' counterclaims, as directed in the accompanying Order.

A memorializing Order accompanies this Memorandum Opinion.


Date: March 27, 2006                                    _____/s/_____

                                                        ROSEMARY M. COLLYER
                                                        United States District Judge