## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KAREN EVANS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 04-2185 (RMC) |
| | ) |
| CHASE MANHATTAN MORTGAGE | ) |
| CORP., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

Plaintiff Karen Evans is trying to regain the family home, lost in a foreclosure against her sister, Dorothy Evans, who is now deceased.  Defendants fall into three groups: the beneficiary of the deed of trust, Chase Manhattan Mortgage Corp. ("Chase"); the trustees at the foreclosure sale, Draper & Goldberg PLLC, and that firm's named partners, David Draper and Darren Goldberg, and two of its associates, James Holderness and Ignacio Cortina (collectively, the "Trustees"); and the purchasers at the foreclosure sale, Anthony Chibs and Joan Tirbaney, and their business, Aceware Investment Group LLC (collectively, the "Purchasers").[1]

An earlier suit by Dorothy Evans against Chase was dismissed by the D.C. Superior Court for want of prosecution.  This Court previously determined that the dismissal constituted a final judgment on the merits under D.C. Superior Court Rule of Civil Procedure 41(b) and, thus, barred Plaintiff's present claims against Chase under the doctrine of claim preclusion.  *Evans v. Chase Manhattan Mortgage Corp.*, No. 04-2185, Mem. Op. at 6-13 (D.D.C. Mar. 27, 2006) [Dkt.

---

[1] The Court has also granted leave to intervene to First American Title Insurance Company, which issued a title insurance policy to Mr. Chibs and Ms. Tirbaney on the property at issue.

#66].  This Court declined, however, to dismiss as *res judicata* Plaintiff's claims against the Trustees and Purchasers, for those Defendants offered little more than conclusory assertions that they were in privity with Chase.  *Id.* at 14-18.

Nevertheless, because all parties agreed that determining whether or not the Trustees and Purchasers were, in fact, in privity with Chase is the central issue in this case, the Court directed those Defendants to file renewed motions to dismiss with a fuller analysis of the issue.  Order of July 24, 2006, at 2-3 [Dkt. #85].  Those motions are now fully briefed and ripe for decision.  With the benefit of the parties' more complete analysis of the foreclosure process and their responsibilities under the deed of trust, the Court now concludes that the Trustees were in privity with Chase, and that the Purchasers were in privity with the Trustees.  The Court will therefore dismiss the bulk of Plaintiff's claims against those Defendants as barred by the doctrine of claim preclusion.

## I. FACTUAL BACKGROUND

Chase was the holder of a Note in the amount of $102,550 that was executed by Dorothy Evans on May 5, 2000.  A Deed of Trust on the family home at 1012 6th Street NE, Washington, DC 20002 (the "Property") secured the loan.[2]  Compl.[3] ¶ 17 & Ex. A.  By the express terms of the Deed of Trust, Dorothy conveyed the Property to the original trustee (who is not a party to this suit) to be held "in trust, with power of sale" for the benefit of the lender.  Compl. Ex. A at 1.  The Deed of Trust also provided that the lender could, at its option, appoint a successor trustee

---

[2]  The original holder of the Note (and the lender named in the Deed of Trust) was F&M Mortgage Services Inc.  Compl. ¶ 17 & Ex. A.  Chase later purchased the Note from F&M and thereby succeeded to the status of beneficiary of the Deed of Trust.  *Id.* ¶ 28.  F&M has no further relevance to this case.

[3]  "Compl." refers to the Second Amended Complaint [Dkt. #23].

at any time by recording a Deed of Appointment.  Compl. Ex. A ¶ 20.  In this case, Chase did so by appointing Messrs. Goldberg, Holderness, and Cortina as Substitute Trustees in a Deed of Appointment dated February 7 and recorded on February 15, 2002.  J.A. Ex. 1 at 1, 4 [Dkt. #63]. By the terms of the Deed of Trust, the Substitute Trustees thus succeeded to "all the title, power and duties" of the original trustee.  Compl. Ex. A ¶ 20.

   Dorothy defaulted on her payment obligations under the Note and Deed of Trust. While the exact amount of her default is in dispute, the fact of her default is not.[4]  As was its right, Chase accelerated the loan, demanded full payment, and invoked the power of sale.  On or about January 11, 2002, Chase notified Dorothy by letter that it had forwarded her loan file to an "attorney/trustee" to "immediately initiate foreclosure proceedings."  Compl. Ex. I.  That letter identified "Draper & Goldberg, PLLC" as the "attorney/trustee who is handling the foreclosure." *Id.*  On or about February 12, 2002, Mr. Draper sent a Notice of Foreclosure Sale to Dorothy on Chase's behalf.  Compl. Ex. K.  That notice set forth the balance allegedly owed on the Note ($104,223.13) and the minimum payment allegedly required to cure the default ($4,418.92).  *Id.* While there is a dispute as to the accuracy of these figures, there is no dispute that they are the amounts provided by Chase to Mr. Draper, and by Mr. Draper to Dorothy.  The foreclosure notice identified "David W. Draper, Jr., Esq., Draper & Goldberg P.L.L.C." as the "[p]erson to contact to stop the foreclosure sale," and stated that the sale would take place on March 14, 2002.  Compl. Ex. K.  The foreclosure notice was recorded on February 12, 2002.  Compl. ¶ 46.

---

[4]  In a January 23, 2002, letter she sent to Chase "to explain why [she] ha[d] fallen behind on [her] mortgage payments," Dorothy Evans acknowledged that she was by then "approximately four months" in arrears.  Compl. ¶ 44 & Ex. J.

The foreclosure sale took place as scheduled on March 14, and the Property was sold to the highest bidders at auction, Mr. Chibs and Ms. Tirbaney. *Id.* ¶¶ 57, 60. Mr. Chibs and Ms. Tirbaney promptly executed a sales agreement with the Substitute Trustees. *See* Trustees Mot. to Dismiss Purchasers' Cross-Claim Ex. 1 [Dkt. #69]. On April 11, 2002 — after the foreclosure sale but before title changed hands — Dorothy filed a pro se complaint in D.C. Superior Court styled *Dorothy E. Evans v. Chase Manhattan Mortgage Corp. c/o Draper & Goldberg*, No. 03-2730. Compl. ¶ 58; J.A. Ex. 3 [Dkt. #63].[5] As this Court has already explained, that complaint was dismissed on July 12, 2002, for failure to prosecute. *See* Mem. Op. at 2-3; J.A. Exh. 12.[6]

Three days later, the transfer of title proceeded. On July 15, the Substitute Trustees delivered a Trustees' Deed to Mr. Chibs and Ms. Tirbaney. *See* Compl. Ex. M; Trustees Mot. to Dismiss Purchasers' Cross-Claim Ex. 2 [Dkt. #69].[7] That deed was recorded on October 16, 2002. Compl. Ex. M. Mr. Chibs and Ms. Tirbaney later quitclaimed the Property to their business, Aceware Investment Group LLC, through a deed dated October 10, 2003, and recorded on May 27, 2004. Compl. ¶ 87 & Ex. R.

In the meantime, on January 4, 2003, Dorothy Evans died of metastatic liver cancer. Compl. ¶ 64. After an unsuccessful attempt to resurrect Dorothy's case, Plaintiff filed a new complaint in D.C. Superior Court, captioned *Karen Evans v. Chase Manhattan Mortgage Corp., et*

---

[5] Chase's answer was filed by Draper & Goldberg PLLC in its role as Chase's legal counsel. Although Draper & Goldberg PLLC was served with a copy of Dorothy's complaint, J.A. Exh. 9, that firm does not contend that it was a named defendant in the previous action. Mem. Op. at 2 n.3.

[6] Dorothy's motion to reconsider the dismissal was denied and her appeals were unavailing. *See* Mem. Op. at 2-3.

[7] Curiously, although the Trustees' Deed was notarized on July 15, 2002, its introductory paragraph bears the date April 12, 2002. Compl. Ex. M.

*al.*, No. 04-8985. Chase, with the consent of all defendants then named, timely removed the action to this Court. As noted earlier, the Second Amended Complaint names three groups of Defendants: Chase, the Trustees, and the Purchasers. The claims against Chase, which this Court has already dismissed, alleged that the foreclosure was wrongful because Chase incorrectly determined that Dorothy was in default and misstated the cure amount in the foreclosure notice. Compl. ¶¶ 93, 95, 105, 107, 120, 131, 137, 147-48, 154-55, 172. The claims against the Trustees allege that they failed to check the accuracy of the cure amount in the foreclosure notice; failed to delay the foreclosure sale for Chase to provide an accounting; and failed to pay out the surplus from the foreclosure sale promptly. *Id.* ¶¶ 94, 97, 114-16, 120, 131, 147-48, 163, 167, 177. Against the Purchasers, Plaintiff seeks a declaratory judgment that she is the rightful owner of the Property. *Id.* ¶¶ 188, 202. She further pleads wrongful eviction, alleging that the Purchasers ousted her based on a default judgment they obtained by assuring the D.C. Superior Court's Landlord & Tenant Branch that Dorothy had been properly served, although they knew that she had passed away and could not be served. *Id.* ¶¶ 207-27. Finally, she pleads "interference with [her] right to body [r]emains," alleging that an urn containing Dorothy's ashes was removed and lost at the time of the eviction. *Id.* ¶¶ 229-37.[8]

## II. LEGAL STANDARDS

Defendants move to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in

---

[8] Although Plaintiff brings suit as the personal representative of Dorothy's estate, Compl. ¶ 1, she also sues Mr. Chibs and Ms. Tirbaney in her individual capacity, *id.* ¶ 2.

support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The plaintiff need not plead the elements of a prima facie case in the complaint. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). In deciding a Rule 12(b)(6) motion, the Court "may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted). *Res judicata* is an affirmative defense that is generally pleaded in a defendant's answer, but it is also properly brought in a pre-answer Rule 12(b)(6) motion when "all relevant facts are shown by the court's own records, of which the court takes notice." *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992); *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978) (*res judicata* "may be raised on a 12(b)(6) motion if the predicate establishing the defense is apparent from the face of the complaint"); *see Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 76-77 (D.C. Cir. 1997) (noting that courts have permitted parties to assert *res judicata* under Rule 12(b)(6)).

Under the doctrine of *res judicata*, also known as claim preclusion, "a judgment on the merits in a prior suit bars a second suit involving identical parties or their privies based on the same cause of action." *Apotex Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004). "*Res judicata* plays a central role in advancing the 'purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions.'" *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). "As the Supreme Court has explained: 'To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Id.* (quoting *Montana*,

440 U.S. at 153-54). In short, the doctrine embodies the principle "that a party who once has had a *chance* to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so." *SBC Comms. Inc. v. FCC*, 407 F.3d 1223, 1229 (D.C. Cir. 2005) (quoting the Restatement (Second) of Judgments ch. 1 at 6 (1982)).

The D.C. Circuit has "embraced the Restatement (Second) of Judgments' pragmatic, transactional approach to determining what constitutes a cause of action" for *res judicata* purposes. *U.S. Indus. Inc. v. Blake Constr. Co.*, 765 F.2d 195, 205 (D.C. Cir. 1985). "In addressing the cause-of-action question, the Restatement speaks in terms of a transaction or series of transactions and gives 'weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Id.* (quoting the Restatement (Second) of Judgments § 23(2) (1982)). "The Restatement approach reflects a trend 'in the direction of requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence.'" *Id.* (quoting 1B J. Moore, Moore's Federal Practice ¶ 0.410[1], at 359 (2d ed. 1983)). The D.C. Circuit in *U.S. Industries* specifically examined whether there was an identity of parties, an identity of subject matter, and an identity of contract between the two cases, and whether there was a final adjudication on the merits in the prior case. *Id.* at 206.

Because the defense of *res judicata* is of jurisdictional character, courts can and should raise the issue *sua sponte*. *See Stanton*, 127 F.3d at 77 (D.C. Cir. 1997) ("As *res judicata* belongs to courts as well as to litigants, even a *party's* forfeiture of the right to assert it . . . does not destroy a *court's* ability to consider the issue *sua sponte*."). Noting that "D.C. courts articulating the doctrine [of *res judicata*] commonly cite federal cases applying federal law," the D.C. Circuit has

"discern[ed] no material differences in the District of Columbia's law of *res judicata* and the federal common law of *res judicata*." *Id.* at 78 n.4. "Since claim preclusion is an affirmative defense, the burden is on the party asserting it to prove all of the elements necessary for its application." 18 James Wm. Moore et al., *Moore's Federal Practice* § 131.52 (3d ed. 2005).

### III. ANALYSIS

As summarized above, the four *res judicata* elements traditionally applied by this Court are: (1) an identity of parties; (2) a judgment from a court of competent jurisdiction; (3) a final judgment on the merits; and (4) an identity of the cause of action. *See, e.g.*, *Am. Forest Research Council v. Shea*, 172 F. Supp. 2d 24, 29 (D.D.C. 2001); *see also U.S. Indus.*, 765 F.2d at 205. No party has ever disputed that the Superior Court was competent to adjudicate Dorothy's prior case, Mem. Op. at 6, and this Court previously determined that the Superior Court's dismissal of that case constituted a final judgment on the merits, *id.* at 7-8. Thus, the only remaining questions are whether there are an identity of the parties and an identity of the cause of action.

### A. Claims Against the Trustees

Plaintiff names the Trustees in seven[9] counts: (I) Wrongful Foreclosure; (III) Breach of Fiduciary Duty; (IV) Civil Conspiracy and Fraud; (V) Negligent Misrepresentation; (VII) Violation of the Consumer Protection Procedures Act; (IX) Intentional Infliction of Emotional Distress; and (XI) Accounting. The Court previously declined to dismiss these claims because the Trustees failed to establish that they were in privity with Chase. At that time, the Court summarized the parties' arguments as follows:

---

[9] The Court's March 27, 2006, Memorandum Opinion incorrectly stated that the Trustees are named as Defendants in Count VIII, which alleges a second violation of the Consumer Protection Procedures Act. Mem. Op. at 6, 13. Chase alone was named in that Count. Compl. at 22.

> Plaintiff argues that because trustees under a deed of trust must act for the benefit of both parties, borrower as well as lender, the Trustees here cannot possibly have the same legal right as Chase with respect to the Property.  In support of the contrary proposition that trustees under a deed of trust are *ipso facto* in privity with the beneficiary of the deed of trust, the Trustees cite no case law.

Mem. Op. at 15 (citations and internal quotation marks omitted).  The Trustees' argument, now backed with case law, establishes that they are, in fact, in privity with Chase.

It is well established that, in the District of Columbia, "a trustee under a deed of trust owes fiduciary duties both to the noteholder and to the borrower."  *Perry v. Va. Mortgage & Invest. Co.*, 412 A.2d 1194, 1197 (D.C. 1980) (citing *S&G Invest. Inc. v. Home Fed. Sav. & Loan Assoc.*, 505 F.2d 370, 377 n.21 (D.C. Cir. 1974)).  It is equally well established, however, that this trust relationship is a limited one:

> A trustee under a deed of trust with conventional provisions . . . is basically a trustee of a power to convey title under certain circumstances, and although the trustee must exercise such powers and duties with strict fidelity to ethical principles . . . his management responsibilities fall short of those conferred on trustees generally.

*Id.* (quoting *S&G Invest.*, 505 F.2d at 377 n.21) (internal quotation marks omitted).  Accordingly, "as a general proposition, trustees of deeds have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia."  *Id.*  Indeed, the D.C. Circuit has said that "[t]he role of such a trustee is more nearly that of a common agent of the parties to the instrument."  *S&G Invest.*, 505 F.2d at 377 n.21; *see also Washington v. Metro. Life Ins. Co.*, 330 A.2d 525, 528 n.3 (D.C. 1974) (noting, in a property dispute governed by Virginia law, that a "trustee under a deed of trust is, of course, the agent of both grantor and beneficiary").

Accordingly, the Trustees submit that they acted as Chase's agent in sending the foreclosure notice and conducting and consummating the foreclosure sale. Chase's Mem.[10] at 8-10.[11] Of course, a trustee may or may not be an agent, and an agent may or may not be a trustee. "One who has title to property which he agrees to hold for the benefit and subject to the control of another is an agent-trustee and is subject to the rules of agency." Restatement (Second) of Agency § 14B (1957). The question whether a trustee is also an agent of the beneficiary depends on whether the trustee is subject to the control of the beneficiary as to the manner of performance. *See id.* § 14B cmt. f ("If it is agreed that the [beneficiary] is to have general supervision and can, if he chooses, direct what is, or is not, to be done, an agency is indicated."). Whether such agreement existed "depends upon the construction of the words used in the light of all the circumstances," *id.* § 14B cmt. c, and upon "the amount of control agreed to be exercised by the [beneficiary], or, in doubtful situations, upon the amount of control in fact exercised," *id.* § 14B cmt. f.

Here, the Trustees' obligations and the manner of performance of those obligations are set forth in the Deed of Trust. That document provided for the following procedures if the lender, Chase, invoked the power of sale:

- "Lender shall send written notice as prescribed by applicable law to Borrower and to the other persons prescribed by applicable law of the occurrence of an event of default and of Lender's election to cause the property to be sold." Compl. Ex. A ¶ 18.

---

[10] Defendant Chase Home Finance LLC's Memorandum of Law in Support of Defendant Trustees' and Purchasers' Renewed Motions to Dismiss Second Amended Complaint [Dkt. #87].

[11] Plaintiff at times agrees that the Trustees acted as Chase's agent. *Compare* Pl.'s Mem. at 11 [Dkt. #94] ("Not only were Trustee Defendants acting as agents for Chase Mortgage, but they also had an affirmative duty to act as agents of D. Evans . . . .") *with id.* at 13 (suggesting that "language in the Deed of Trust illustrates that the trustee is not an agent or employee of the lender").

- "Trustee shall give notice of sale by public advertisement as Trustee deems proper to protect the interests of Borrower and Lender." *Id.*

- "After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines." *Id.*

- "Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale." *Id.*

- "Trustee shall deliver to the purchaser [a] Trustee's deed conveying the Property without any covenant or warranty, express or implied." *Id.*

By the terms of the Deed of Trust, then, Chase's unilateral decision to invoke the power of sale triggered the Trustees' mandatory duties to publicly advertise the foreclosure sale, auction off the Property to the highest bidder, and deliver an appropriate deed to the buyer. *See id.* Moreover, the Deed of Trust gave Chase the authority to replace the Trustees at will by appointing successors; no equivalent power was extended to the borrower. *Id.* ¶ 20. Under these circumstances, the Court agrees that the Trustees acted as Chase's agents to the extent that they advertised, conducted, and consummated the foreclosure sale. *See Edwards v. John Hancock Mut. Life Ins. Co.*, 973 F.2d 1027, 1032-33 (1st Cir. 1992); *Int'l Longshoremen's Ass'n v. NLRB*, 56 F.3d 205, 213 (D.C. Cir. 1995) (describing *Edwards* as finding that "trustees were agents of insurance company where deeds of trust empowered company to control conduct of trustees with respect to property at issue").

A slightly different analysis pertains to the Trustees' delivery of the Notice of Foreclosure Sale to Dorothy.  As noted earlier, it was not the Substitute Trustees but rather Mr. Draper and/or Draper & Goldberg PLLC that sent the foreclosure notice.  However, the Deed of Trust makes clear that it is the responsibility of the lender, not the trustee, to notify the borrower that default has occurred and foreclosure is imminent.  Compl. Ex. A ¶ 18.  That provision is consistent

11

with local law, which requires that the requisite notice be provided by "the holder of the note . . . or its agent." D.C. Code § 42-815(b) (2007);[12] *see also* D.C. Mun. Reg. § 9-3100 (2007). Thus, in sending the foreclosure notice, Mr. Draper and/or Draper & Goldberg PLLC were acting not in a trustee capacity, but in their role as Chase's attorneys.[13] This, of course, is a quintessential agency relationship. Restatement (Second) Agency § 14 cmt. a (finding it "clear that there is an agency relation . . . in the case of recognized agents such as attorneys at law").

The conclusion that the Trustees acted, in one capacity or another, as Chase's agents does not end the inquiry, for agents are not necessarily in privity with their principals. Under D.C. law, "[f]or *res judicata* purposes, agents and principals are not ordinarily in privity with each other, and a decision on the merits in an action against the principal is *res judicata* in a later action against

---

[12] D.C. Code § 42-815(b) provides in full:

> No foreclosure sale under a power of sale provision contained in any deed of trust, mortgage or other security instrument, may take place unless the holder of the note secured by such deed of trust, mortgage, or security instrument, or its agent, gives written notice, by certified mail return receipt requested, of said sale to the owner of the real property encumbered by said deed of trust, mortgage or security instrument at his last known address, with a copy of said notice being sent to the Mayor of the District of Columbia, or his designated agent, at least 30 days in advance of the date of said sale. Said notice shall be in such format and contain such information as the Council of the District of Columbia shall by regulation prescribe. The 30-day period shall commence to run on the date of receipt of such notice by the Mayor. The Mayor or his agent shall give written acknowledgment to the holder of said note, or its agent, on the day that he receives such notice, that such notice has been received, indicating therein the date of receipt of such notice. The notice required by this subsection in regard to said mortgages and deeds of trust shall be in addition to the notice described by subsection (a) of this section.

[13] Indeed, Draper & Goldberg PLLC represented Chase in Dorothy's original suit in D.C. Superior Court.

the agent only if the prior action concerned a matter within the agency." *Advantage Health Plan Inc. v. Knight*, 139 F. Supp. 2d 108, 111 (D.D.C. 2001) (quoting *Usher v. 1015 N St. N.W. Coop. Ass'n*, 120 A.2d 921, 922 (D.C. 1956), and *Major v. Inner City Prop. Mgmt.*, 653 A.2d 379, 381 (D.C. 1995)) (internal quotation marks and ellipsis omitted).

Here, the prior action — Dorothy's suit in Superior Court — concerned a matter within the agency. Dorothy originally challenged the foreclosure sale on the following ground: "Draper & Goldberg on behalf of [Chase] foreclosed and sold my home on March 14, 2002. The amount of the foreclosure was incorre[c]t, unfounded and false. I wish the court to stop this foreclosure." J.A. Ex. 5 [Dkt. #63]. Dorothy thereby raised the issues whether she was in default, whether the amount of delinquency was correct, and whether the foreclosure sale should be enjoined as a result. Although she did not formally name the Trustees as defendants in Superior Court, she knew that they were acting on Chase's behalf. That was her opportunity to raise any claims she then had against them with respect to the pending foreclosure. The Trustees' actions in delivering the foreclosure notice, advertising and conducting the auction, and delivering title were within the scope of the agency in all relevant respects. The Trustees are therefore in privity with Chase, *see Major*, 653 A.2d at 381; *Advantage Health*, 139 F. Supp. at 111, and Plaintiff is barred by *res judicata* from bringing claims related to the propriety of the foreclosure sale against the Trustees.

However, three of Plaintiff's claims against the Trustees — specifically, Counts III, IX, and XI — are not barred by *res judicata*, for they arose after Dorothy filed her Superior Court complaint on April 11, 2002. "Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been raised* in that action." *Apotex*, 393 F.3d at 218 (D.C. Cir. 2004) (internal quotation marks and citation

omitted).  The doctrine does not, however, "bar parties from bringing claims based on material facts that were not in existence when they brought the original suit."  *Id.*  Count III alleges, in part, that the Trustees breached their fiduciary duties to Dorothy by failing to distribute the surplus from the foreclosure sale promptly.  Compl. ¶ 116.  Count IX alleges that this delay resulted in the intentional infliction of emotional distress.  *Id.* ¶ 167.  And Count XI alleges that the Trustees failed to provide an adequate accounting of the foreclosure proceeds.  *Id.* ¶ 177, 180-81.  These allegations concern not matters within the scope of the agency, but duties allegedly owed to Dorothy arising from the Trustees' fiduciary obligations, limited as they were, under the Deed of Trust.  Because the circumstances underlying these claims had not yet arisen at the time of Dorothy's prior suit, *res judicata* does not bar Plaintiff from litigating the claims now.  *See Apotex*, 393 F.3d at 218.[14]

### B. Claims against the Purchasers

Plaintiff brings four counts against the Purchasers: (XII) Declaratory Relief quieting title (against Mr. Chibs and Ms. Tirbaney); (XIII) Declaratory Relief quieting title (against Aceware); (XIV) Wrongful Eviction (against Mr. Chibs and Ms. Tirbaney); and (XV) Interference with Right to Body [sic] Remains (against Mr. Chibs and Ms. Tirbaney).  The Court previously said that:

> the Purchasers, like the Trustees, offer nothing more than conclusory assertions that they, too, are in privity with Chase.  They simply assert that their rights in the Property are "identical and successive" to those held by the Trustees who, for the reasons stated in the Trustees['] own motion, which the Purchasers adopt, are in privity with Chase.

---

[14] However, because "trustees of deeds have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia," *Perry*, 412 A.2d at 1197, and only Messrs. Goldberg, Holderness, and Cortina were appointed as Substitute Trustees, J.A. Ex. 1 at 1, 4, and thereby succeeded to "all the title, power and duties" under the Deed of Trust, Compl. Ex. A ¶ 20, the Court will dismiss Counts III, IX, and XI as to Mr. Draper and Draper & Goldberg PLLC, for the Plaintiff has identified no source — contractual, statutory, or otherwise — for the duties she seeks to impose on them.

14

Mem. Op. at 18.  Because "[t]he success of the Purchasers' *res judicata* argument thus depend[ed] on the success of the Trustees' privity argument," the Court declined to dismiss the claims against the Purchasers.  *Id.*

As the Court has now determined, however, the Trustees are in privity with Chase. The point that the Trustees are likewise in privity with Mr. Chibs and Ms. Tirbaney, as are Mr. Chibs and Ms. Tirbaney with Aceware, need not be belabored.  "[P]rivity is a functional concept entailing mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right."  *Leslie v. LaPrade*, 726 A.2d 1228, 1231 (D.C. 1999).  "Such identification exists as to property transferred in trust from one owner or trustee to a successor."  *Id.*  Here, these parties' successive interests in the Property establish that they are in privity with one another and, thus, that there is a sufficient identity of parties for *res judicata* purposes.

However, two of Plaintiff's claims against the Purchasers — Counts XIV (wrongful eviction) and XV (interference with remains) — arose well after Dorothy filed her Superior Court complaint on April 11, 2002, and are therefore not barred by *res judicata*.  *See Apotex*, 393 F.3d at 218.  There are neither enough facts nor law in the record for the Court to address the Purchasers' arguments that these claims necessarily fail if Plaintiff cannot establish her right to title at the time of eviction.

## IV. CONCLUSION

For the foregoing reasons, as to the Trustees, the Court will dismiss Counts I, III (in part), IV, V, and VII.  Moreover, the Court will dismiss Counts III (in part), IX, and XI as to Mr.

Draper and Draper & Goldberg PLLC, meaning that they are dismissed from this action.  As to the Purchasers, the Court will dismiss Counts XII and XIII.

Plaintiff's only remaining claims are Counts III (to the extent it alleges an improper distribution of surplus), IX (intentional infliction of emotional distress), and XI (accounting) against the Substitute Trustees (Messrs. Goldberg, Holderness, and Cortina), and Counts XIV (wrongful eviction) and XV (interference with remains) against Mr. Chibs and Ms. Tirbaney.  The Purchasers' counter-claim to quiet title and cross-claim for indemnification against Chase and the Trustees also remain live.  The Deputy Clerk will schedule a Status Conference to discuss further proceedings.

A memorializing Order accompanies this Memorandum Opinion.


Date: March 23, 2007                              _____/s/_____
                                                  ROSEMARY M. COLLYER
                                                  United States District Judge